NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Appellant,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀Case No. 2D18-1060
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
QUESHON DIONDRE MONROE,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Appellee.⠀⠀⠀⠀⠀⠀⠀⠀)
_____)

Opinion filed August 16, 2019.

Appeal from the Circuit Court for
Hillsborough County; Kimberly K.
Fernandez, Judge.

Ashley Moody, Attorney General,
Tallahassee, and Katie Salemi-Ashby,
Assistant Attorney General, Tampa, for
Appellant.

Howard L. Dimmig, II, Public Defender, and
Pamela H. Izakowitz, Assistant Public
Defender, Bartow, for Appellee.

KHOUZAM, Chief Judge.

⠀⠀⠀⠀⠀The State appeals the order granting Queshon Diondre Monroe's motion

to suppress statements he made to law enforcement during the investigation of the

shooting death of Juan Carlo Arenas.  The court concluded that Monroe's waiver of his

Miranda[1] rights was not knowing and voluntary because he asked a clear question and the interviewing detective did not answer it in good faith. But because the trial court's conclusion is not supported by the evidence, we reverse.

The court determined that Monroe's waiver of his Miranda rights was not knowing and voluntary based on the following exchange, in which Monroe asked a question and Detective Blair responded:

**Detective Blair:** Okay. Um, do you understand where you're at?

**Queshon Monroe:** Yes.

**Detective Blair:** Okay. Do you feel like it's impairing you at any point—in any way, right now?

**Queshon Monroe:** No.

**Detective Blair:** Meaning you're not understanding what I'm asking you or talking to you, like that.

**Queshon Monroe:** No, I understand everything.

**Detective Blair:** Okay. All right. That's what I wanted to make sure. I'm gonna read this to you, okay? And you can read along with me, all right? And it's a consent to be interviewed, all right? And it's "I," and it would be your name, "do hereby consent to be interviewed by the below listed Hillsborough County Sheriff's Office law enforcement official concerning the above listed incident/offense." ["]I further understand that I have the right to remain silent and can invoke this right at any time during questioning.["] Do you understand that?

**Queshon Monroe:** Yes, sir.

**Detective Blair:** Okay. "If I do make a statement, it can and will be used against me in a court of law." Do you understand that?

_____

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

- 2 -

**Queshon Monroe:**  Yes, sir.

**Detective Blair:**  Okay.  "I have the right to speak with and have an attorney present during questioning."  Do you understand that?  Is that a yes?

**Queshon Monroe:**  Yes.

**Detective Blair:**  Okay.  "If I cannot afford an attorney, one will be appointed to me without charge before any questioning, if that is my desire."  Do you understand that?

**Queshon Monroe:**  Yeah, I understand that.  So, uh, what—starting with 3 and 4, it says I have the right to speak with an attorney during the questioning.

**Detective Blair:**  And have an attorney present during questioning.  Yes, sir.

**Queshon Monroe:**  Okay.  And the fourth one said—

**Detective Blair:**  "If I cannot afford an attorney, one will be appointed to me without any charge before any questioning, if that is my desire."

**Queshon Monroe:**  Okay.

**Detective Blair:**  Okay?  You understand both of those?

**Queshon Monroe:**  Yes, yes.

**Detective Blair:**  Okay.  Number 5.  "If I wish to make any statement, I may invoke my right to an attorney or to remain silent at any time during the questioning."  Do you understand that?

**Queshon Monroe:**  All right.  But can I ask a question?

**Detective Blair:**  Sure.

**Queshon Monroe:**  Um, when you're opponent—appointed, uh, an attorney, like, isn't that when you be—being charged?  When you appointed attorney?

**Detective Blair:**  Well normally, appointing an attorney means if you can't afford one.  Like if you have something in

the court system and you can't afford the attorney, then the courts would appoint you one. That's what that means. So if you said I don't have the money to pay for an attorney, because normally you would pay for an attorney, then the courts would appoint you one. Does that make—does that answer your question?

**Queshon Monroe:** I mean, it doesn't but—

**Detective Blair:** Well here, maybe this better answers it. You're asking, doesn't that mean I'm getting—that something about a charge?

**Queshon Monroe:** Yeah.

**Detective Blair:** Okay. This is—I have to read you this and you have to understand this for me to even talk to you or to begin even start asking you any questions or tell you what we need to talk to you or anything like that. Okay? This doesn't mean that you're getting charged with anything. It means that I'm asking you for permission to talk to me. That's what I'm—that's what this is going over. And you need to understand this and you need to understand your rights. Okay?

**Queshon Monroe:** Yeah.

**Detective Blair:** So you—we're at 5. "If I wish to make any statement, I may invoke my right to an attorney or to remain silent at any time during questioning." Do you understand that?

**Queshon Monroe:** Yeah.

**Detective Blair:** Okay. "I understand these rights and no one has threatened, coerced, or promised me anything in order to induce me to make a statement. I presently wish to make a statement and/or answer questions without an attorney being present." Do you understand that?

**Queshon Monroe:** I understand that.

**Detective Blair:** Okay. Write your name right here. It's Queshon. What do you go by?

**Queshon Monroe:** I go by Queshon.

**Detective Blair:** Queshon, okay. All right. If you could, sign that I have read you your rights and you understand your rights. And that's gonna be right there where it says subject. All right. And it is 20 'til 5:00 on the 7th. All right. We have a couple of—a few questions . . . .

The court determined that Monroe's waiver of his <u>Miranda</u> rights was not knowing and voluntary because, in response to a question from Monroe, Detective Blair inaccurately explained the right to counsel. The court concluded that the detective's response was "not made in good faith and was not straightforward, honest, and fair." But the evidence does not support the trial court's conclusion.

As a threshold issue, we note that "[a]n appellate court reviewing a trial court's ruling on a motion to suppress is required to interpret the evidence and all reasonable inferences and deductions from the evidence in the manner most favorable to sustaining the trial court's ruling." <u>State v. Sepanik</u>, 110 So. 3d 977, 978 (Fla. 2d DCA 2013). "Therefore, as a general rule, a trial court's conclusions on the voluntariness of a confession will not be disturbed unless clearly erroneous." <u>Id.</u> However, this "standard does not apply with full force when the trial court's determination turns upon the meaning of transcripts, depositions, other documents, or recordings which are presented in essentially the same form to the appellate court because the trial court does not have a special vantage point in such cases." <u>Id.</u> Here, because the appellate record includes the video recording of Monroe's interview with law enforcement, we are in the same position to review it as the trial court—in this scenario, the trial court does not have a special vantage point. <u>See id.</u> at 979. Moreover, there is no factual dispute about what was said during the interview, so the issue before us is purely an issue of law. <u>See</u> <u>id.</u>

The Florida Supreme Court in Almeida v. State, 737 So. 2d 520 (Fla. 1999), "distinguished an equivocal statement that requires no clarification from a question that is 'prefatory to—and possibly determinative of—the invoking of a right.'" Daniel v. State, 238 So. 3d 1283, 1287 (Fla. 5th DCA 2018) (quoting Almeida, 737 So. 2d at 523). The Almeida court held "that if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer." 737 So. 2d at 525. Law enforcement cannot give evasive answers to or skip over the suspect's questions. Id. Law enforcement cannot override or "steamroll" the suspect. Id. This is very important because "[a] suspect who has been ignored or overridden concerning a right will be reluctant to exercise that right freely." Id. However, "[o]nce the officer properly answers the question, the officer may then resume the interview (provided of course that the defendant in the meantime has not invoked his or her rights)." Id. "Any statement obtained in violation of this proscription violates the Florida Constitution and cannot be used by the State." Id. With these considerations in mind, we apply the following three-step analysis to questions or prefatory statements: "(1) was the defendant referring to a constitutionally guaranteed right; (2) was the utterance a clear, bona fide question calling for an answer, not a rumination or a rhetorical question; and (3) did the officer make a good-faith effort to give a simple and straightforward answer." Daniel, 238 So. 3d at 1287-88 (citing Almeida, 737 So. 2d at 523-25).

After reviewing the recording of the interview, we conclude that Monroe's question, which was not immediately clear, did not concern his right to counsel and that Detective Blair not only made a good-faith attempt to give a straightforward answer but

also answered the question accurately. Monroe first asked, "[W]hen you're . . . appointed, uh, an attorney, like, isn't that when you be—being charged? When you appointed attorney?" Interpreting this as a question about Monroe's right to an attorney, Detective Blair attempted to answer the question he believed Monroe was asking. When Monroe pointed out that the detective had not answered his question, the detective made another attempt to understand the question and answer it. Monroe confirmed that he was asking whether the Miranda warnings regarding appointment of counsel meant that he was getting charged. Detective Blair accurately explained that the warnings did not necessarily mean that he was getting charged with anything but rather that the detectives were asking permission to talk to him. This time, Monroe appeared to be satisfied with the answer and did not ask for any more clarification. This is not a case where the detective overrode or steamrolled the suspect. Detective Blair did not ignore Monroe's concern or give him evasive answers.

Moreover, nothing else in the record suggests that Monroe's waiver of his Miranda rights was anything but knowing, intelligent, and voluntary. See Ramirez v. State, 739 So. 2d 568, 575-76 (Fla. 1999) (discussing the factors to be considered in determining whether a waiver of Miranda warnings is valid). After Detective Blair read each right from a standard consent form, Monroe—who has a GED and previous experience with the criminal justice system—indicated that he understood. Detective Blair did not employ any cajoling or trickery. Monroe then signed the written waiver form without reluctance.

We conclude that the evidence is legally insufficient to support the trial court's ruling and that the court erred in granting the motion to suppress. Accordingly, we must reverse.

Reversed and remanded.


NORTHCUTT and KELLY, JJ., Concur.